UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Keair Boyd,

                    Plaintiff

v.

Tanisha Henry, et al.,

                    Defendants

Case No. 2:23-cv-01022-CDS-MDC

**Order Granting the Defendants'
Unopposed Motion for Summary Judgment**

[ECF No. 36]

This is a 42 U.S.C. § 1983 civil rights action brought by incarcerated pro se plaintiff Keair Boyd alleging that the defendants were deliberately indifferent to his medical needs while he was housed at High Desert State Prison (HDSP). *See* Compl., ECF No. 14. On October 27, 2025, defendants Tanisha Henry and James Scally moved for summary judgment. *See* Mot. for summ. j., ECF No. 36. Any opposition to the motion was due by November 18, 2025.[1] *See* ECF No. 40; Local Rule 7-2(b) ("The deadline to file and serve any points and authorities in response to a motion for summary judgment is 21 days after service of that motion."). As of the date of this order, no opposition is filed. Because I find that Boyd failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), the defendants' motion is granted.

I.      **Background**

        **A.  Boyd's allegations**

        Boyd alleges that around September 20, 2023, through the present,[2] while at HDSP, he was prescribed medication without being seen by a doctor and this medication was improper

---

[1] On November 24, 2025, Boyd filed a notice of change of address. *See* Notice, ECF No. 42. In that same notice, Boyd improperly requested a 22-day extension of time, without filing a separate motion seeking an extension.

[2] I note that while Boyd alleges the date of this violation was September 20, 2023, the record reflects that the incident concerning his medication occurred in 2022.

because it made him ill.[3] ECF No. 14 at 3, 6. Boyd further alleges that he told Henry about the adverse side effects of the medication, but Henry ignored his requests for help. *Id.* at 3, ¶ 4. He also told Henry and medical staff about the denial and "oppressive delay" regarding his medical and dental concerns. *Id.* Boyd alleges that HDSP has a "wait and see" policy that turns into delaying and denying relief, and this is "deliberate indifference" in violation of the Eighth Amendment. *Id.*

Boyd further alleges that after he spoke with Henry, he filed a grievance about his medical condition and illness, but the Associate Warden and other staff ignored and/or rejected these concerns. *Id.* at 4, ¶ 4. Boyd also alleges that Henry told Doe Nursing Director about his medical condition, and the nursing staff about his kites and grievances. *Id.* at 5, ¶ 4. But Boyd asserts that the problem is that there are "no qualified staff to see patients or even to prescribe [them medication]." *Id.*

### B. Medical and grievance history

On July 4, 2022, while Boyd was at Ely State Prison (ESP), he was seen for "discomfort" in his ear, "loss of hearing" and "itching on [right] ear." Boyd's medical file, Defs.' Ex. B, ECF No. 38-1 at 48 (sealed); Bed assignment, Defs.' Ex. A, ECF No. 36-1 at 2. Upon Nursing Assistant Leprettre's assessment, there was a risk of infection in his right ear. Defs.' Ex. B, ECF No. 38-1 at 48 (sealed). On the doctor's progress notes, dated July 12, 2022, it was noted that Boyd had no infection. *See id.* at 49. On September 17, 2022, Boyd was seen for "an intermittent aching piercing pain (7/10) that radiate[d] down his neck in a shooting pain." *Id.* at 45. After the examination, Nurse Caldwell determined that Boyd's left ear was slightly red, and that the tympanic membrane was intact. *Id.* That same day, Dr. Halki prescribed Bactrim (a brand of

---

[3] In his request for relief, Boyd specifically alleges he was wrongfully prescribed "sulfa-imp DS 80G – 160 tab." ECF No. 14 at 6.

sulfamethoxazole and trimethoprim). *Id.* at 34; Description from Mayo clinic, Defs.' Ex. C, ECF No. 36-2.[4]

On September 20, 2022, Boyd was transferred to HDSP. *See* Defs.' Ex. A, ECF No. 36-1 at 2. On September 23, 2022, Boyd submitted a medical kite, stating that he was prescribed Bactrim, which is for his ear, and was ordered that medication at ESP. Defs.' Ex. B, ECF No. 38-1 at 154 (sealed). Boyd requested that the medication be issued "as soon as possible." The pharmacy received the Bactrim medication on October 4, 2022. *Id.* at 19. And on that same day, the medication was dispensed. *Id.* at 154.

On December 20, 2022, Boyd filed a grievance (2006-31-46865). *See* Grievance history, Defs.' Ex. D, ECF No. 36-3 at 9.[5] In that grievance, Boyd asserted that he had submitted medical kites several times to be seen by a doctor for several bites that he got when he arrived at HDSP. *See id.*; ECF No. 14 at 25.[6] He further asserted that after seeking medical treatment, the HDSP medical prescriber placed him on "Sulfa-tmp ds 800-160 tab antibiotics" (modified), without seeing him in person to properly diagnose him. *Id.*; ECF No. 14 at 27. He also asserts that as a result of being prescribed this medication, he became nauseous, vomited, and had diarrhea. ECF No. 14 at 27.

Grievance 2006-63-46865 was rejected several times. *See* Defs.' Ex. D, ECF No. 36-3 at 9. On December 27, 2022, Associate Warden Scally issued a first rejection (informal level), notifying Boyd that his informal grievance was being rejected because he failed to demonstrate

[4] Mayo Clinic page. *See* https://www.mayoclinic.org/drugs-supplements/sulfamethoxazole-and-trimethoprim-oral-route/description/drg-20071899 (last visited Jan. 20, 2026); I take judicial notice of the information included in the Mayo Clinic's page that explains commonly understood meanings of the medical terms and medication, which is included as defendants' exhibit. *See* Fed. R. Evid. 201 (courts may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination); *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) (taking judicial notice of a medical journal's definition of chronic); *DePetro v. Minev*, 2024 U.S. Dist. LEXIS 16008, at *14 n.10 (D. Nev. Jan. 26, 2024) (taking judicial notice of a Mayo Clinic page included in the plaintiff's exhibit).
[5] Grievance 2006-31-46865 was the only grievance filed related to Boyd's medical indifference claim.
[6] The record does not contain medical kites expressing that his medication (allegedly prescribed because of spider or bug bites) caused him to experience pain or some kind of allergic reaction. *See* Medical records, Defs.' Ex. B, ECF No. 38-1 at 91–166 (sealed).

that he attempted to resolve this matter prior to submitting a DOC 3091 informal grievance. ECF No. 14 at 24. Moreover, he was also notified that he did not provide any information or documentation that any such efforts were made. *Id.*

On March 14, 2023, Scally issued a second rejection (informal level). ECF No. 14 at 19. Boyd was informed his informal grievance was again being rejected because he failed to correct deficiencies, and he failed to show that he attempted to resolve this matter prior to submitting a DOC 3091 informal grievance. *Id.*

On April 16, 2023, Boyd filed a first level grievance stating that the response he received to his claims are inaccurate and an "oppressive delay." *Id.* at 16. Boyd explained that he spoke to Henry and Henry directed Boyd to kite the doctor, but he had not received a response. *Id.* at 18.

On April 21, 2023, Scally issued a third and final rejection (level one). *Id.* at 14. Scally explained that Boyd could not proceed to a first level if his informal grievance was not accepted. *Id.* Boyd was again informed that he failed to demonstrate that he "attempted to resolve this matter prior to submitting a DOC 3091 Informal Grievance. A grievance will not be used as a kite." (modified). *Id.* The rejection informed Boyd that his grievance had been reviewed and rejected multiple times for 3098s and so it could no longer be responded to. *Id.*

## C. Boyd's initiated action

Boyd initiated this action on June 30, 2023. *See* ECF No. 3. In Boyd's complaint, he sued multiple defendants for events that took place while he was incarcerated at HDSP. *See* ECF No. 14. After screening Boyd's complaint, the court ordered that Boyd's Eighth Amendment deliberate indifference to a serious medical need claim would proceed against defendants Henry, Scally, and Doe Nursing Director (once he learned his or her identity). *See* Order, ECF No. 13 at 9.[7] The defendants then filed this pending summary judgment motion.

---

[7] The court dismissed Boyd's Eighth Amendment conditions of confinement claim based on a lack of recreation. *See* ECF No. 13 at 9. No amended complaint was filed thereafter.

4

## II.    Legal standard

### A.  Summary judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiffs bear the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.  Administrative exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff. 42 U.S.C. § 1997e(a). The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and

other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Of course, "[a]n inmate need exhaust only such administrative remedies as are 'available,'" which requires that the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016). In *Ross v. Blake*, the United States Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. An administrative remedy may be considered unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; or when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007) (cleaned up). But "the ultimate burden of proof remains with the defendant." *Id.* The trial court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust." *Id.*

III.    **Discussion**

Henry and Scally argue that summary judgment should be granted for the following reasons: (1) the PLRA bars Boyd's claims; (2) they are entitled to qualified immunity; and (3) they had no personal participation in the alleged actions. *See* ECF No. 36. Whether Boyd exhausted his administrative remedies is a threshold issue. *See United States v. Morfin-Rios*, 2023 U.S. Dist. LEXIS 116878, at *3 (S.D. Cal. July 5, 2023). So I address it first, and because I agree

that Boyd failed to exhaust his administrative remedies, in violation of the PLRA, the defendants' motion is granted.[8]

To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in AR 740,[9] and they must complete three levels of grievance: informal, first, and second. *See* AR 740.08–740.10.[10] Generally, inmates must first file an informal grievance within six months of the action giving rise to a medical claim. AR 740.08(4)(A); *Jackson v. Russell*, 2025 U.S. Dist. LEXIS 5058, at *5 (D. Nev. Jan. 8, 2025); Defs.' Ex. E, ECF No. 36-4 at 11. The prison has 45 days to respond to that informal grievance. AR 740.08(12). If the prison denies the informal grievance, the inmate has five days after the receipt of the denial to proceed to the next grievance level. AR 740.08(12)(A). The inmate can then file a first-level grievance, which the prison has 45 days to respond to. AR 740.09(5). If the inmate receives another denial, he has five days to file an appeal to proceed to his second-level grievance. AR 740.09(5)(A). In short, after each denial, the inmate must file an appeal to proceed to his next-level grievance within five days to exhaust the facility's administrative procedures. *Jackson*, 2025 U.S. Dist. LEXIS 5058, at *5.

Here, the defendants in essence argue that Boyd's medical deliberate indifference claim is barred by the PLRA because there is no evidence that Boyd completed the administrative procedure. ECF No. 36 at 5, 6. They further assert that Boyd's only grievance (2006-31-46865) related to medical complications was rejected three times for failing to provide documentation that he attempted to resolve this through informal means required under AR 740 before submitting a grievance. *See* ECF No. 36 at 6 (referencing ECF No. 14 at 15, 19–20, 24); Defs.' Ex. D, ECF No. 36-3 at 9–11.

---

[8] Because I find that Boyd's claims are barred by the PLRA, I do not address the defendants' remaining arguments on the merits.

[9] An NDOC AR is publicly available, and I may take judicial notice of it. *See Brown v. Valoff*, 422 F.3d 926, 931 n.7, n.9 (9th Cir. 2005) (taking judicial notice of prison's Department Operations manual and California Department of Correction Administrative Bulletin); *see also* Fed. R. Evid. 201(b)(2).

[10] *See also* AR 740, Defs.' Ex. E, ECF No. 36-4.

Because Boyd failed to respond to this motion, there are no explanations or contrary arguments before the court at this time addressing this issue. Moreover, based on an independent assessment of the record, there is no readily apparent evidence that suggests that the administrative remedies were exhausted.

The record demonstrates that Boyd attempted to initiate his grievance process, but his grievances were rejected three times. The record is devoid of Boyd's attempt to fix the issues highlighted by Scally in each rejection. *See* ECF No. 14 at 14, 19, 24. The record also supports the decision, and the reasoning included in the informal grievance rejections—that is—there were no supporting kites or documents filed with the informal grievances and attempted first level grievance. *See* Defs.' Ex. B, ECF No. 38-1 at 91–166 (sealed). Based on the evidence before the court, Boyd did not kite regarding incorrect medication being prescribed for an alleged bug bite. *Id.* Rather, once he was transferred to HDSP, he kited to request medication that he was previously prescribed for his ears. *Id.* at 154. The record also reveals that Boyd was familiar with the process of submitting a medical kite, but choose not to do so here. *See id.* at 155 (Boyd submitting a medical kite on September 4, 2022, for a medical issue with his ear).

Although the court may waive the PLRA mandatory exhaustion requirement when there is a "genuine dispute that the grievance procedure was effectively unavailable," Boyd has not shown such unavailability. *See Rodriguez v. Cain*, 2022 U.S. Dist. LEXIS 89323, at *16 (D. Or. May 17, 2022) (citation omitted). Boyd asserted in his complaint that HDSP's policies delayed the process of grieving and asserted that the prison's failure to respond renders an administrative remedy unavailable. ECF No. 14 at 2, ¶ C (citing *Fordley v. Lizarraga*, Case No. 2:16-cv-01985).[11] But his argument is not supported by the record. Scally advised Boyd what he needed to do to cure the deficiencies in his grievances, but he failed to complete or even attempt to complete those actions. So this was not a situation where the opportunity to file a grievance operated as a "simple dead end." *Ross*, 578 U.S. at 643–44. Boyd's informal grievances were reviewed, rejected,

---

[11] The case name associated with the case number cited by Boyd could not be located.

and denied properly. Consequently, the defendants are entitled to summary judgment on Boyd's medical indifference claim based on the failure to exhaust PLRA administrative remedies.

IV.    Conclusion

IT IS HEREBY ORDERED that the defendants' motion for summary judgment [ECF No. 36] is GRANTED.

The Clerk of Court is kindly directed to enter judgment in favor of the defendants and close this case.

Dated: January 26, 2026

_____
Cristina D. Silva
United States District Judge

9